UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ASHLEY BOSSI,

         Plaintiff,

   v.

BANK OF AMERICA,
GEORGE GASTON and GEORGE
HERNANDEZ,

         Defendants.

Civil Action No. 3:14-CV-02301

(Judge Kosik)

FILED
SCRANTON

AUG 19 2016

PER _____
DEPUTY CLERK

## MEMORANDUM

This action, filed on December 3, 2014, against Bank of America, George Hernandez, George Gaston, and Sarah Pierce, has been whittled down from claims sounding in gender discrimination, retaliation, and negligence under Title VII of the Civil Rights Act ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"), to now, one claim alleging retaliation against all but Sarah Pierce, who has been dismissed as a defendant from this action. (Doc. 1, Complaint; Doc. 22, Dismissal of Sarah Pierce). Upon Defendants filing their brief in support of their motion for summary judgment, Plaintiff has conceded and withdrew her gender discrimination and negligence claims. (Doc. 36, Plaintiff's Brief). Thus, Plaintiff pursues one claim against Defendants Bank of America, George Hernandez, and George Gaston: retaliation. (Id.). The motion for summary judgment has been fully briefed by both parties, and is now ripe for disposition. For the reasons that follow, the Court will deny Defendants' motion.

## I. BACKGROUND

Plaintiff was hired by Bank of America ("BOA") in April 2009, as a customer service representative and in 2012, Plaintiff transitioned into sales. (Doc. 32, Def.'s SOF, ¶¶ 1, 3). During the course of her employment at BOA, Plaintiff received several verbal and written warnings in her file for excessive absenteeism, use of profanity, using her cell phone, failing to obtain client verification, and failing to meet overall performance expectations. (Id. at ¶ 9). In an effort to help increase Plaintiff's performance, BOA provided Plaintiff with differing forms of coaching. (Id. at ¶¶ 14, 15). Despite the coaching and warnings, Defendants allege that Plaintiff's performance did not improve, and thus, BOA terminated her employment on May 17, 2016, for "poor performance." (Id. at ¶¶ 14, 15, 52).

Contemporaneously with the above, during the course of employment with BOA, Plaintiff alleges that starting around March 2012, she was sexually harassed by Defendant George Gaston, who is a team manager at BOA. (Id. at ¶¶ 5, 19, 22-26). Although Plaintiff did not report or raise these concerns about Defendant Gaston then, she did report them in May 2013, when another employee raised a complaint about Gaston. (Id. at ¶¶ 19, 20, 22). Upon hearing Plaintiff's allegations, Defendant George Hernandez, a site leader at BOA, reported Plaintiff's complaint to Advice and Counsel.[1] (Id. at ¶ 29). An investigation was conducted into the complaints raised against Gaston and Plaintiff was instructed to keep the matter confidential. (Id.). Sarah Pierce Firquin of BOA's Advice and Counsel division, investigated the allegations made against Gaston. (Id. at ¶ 32). Upon conclusion of the investigation, Pierce determined that

---

[1] Advice and Counsel is a division of BOA responsible for "assisting managers and employees with the full scope of employee relations issues...." (Doc. 32, Def.'s SOF, at 4).

Plaintiff's claims against Gaston could not be substantiated. (Id. at ¶ 34). Pierce did, however, issue a written warning to Gaston for comments he had made to another female employee. (Id. at ¶ 35). Gaston subsequently underwent workplace harassment training, which he completed. (Id. at ¶ 36).

Once the investigation was closed, Pierce advised Plaintiff to keep the information relevant to the investigation confidential, and that if she felt retaliated against, to contact Pierce. (Id. at ¶¶ 37-39). Gaston did not engage in any further harassment or misconduct. (Id. at ¶ 41). Shortly thereafter, on July 10, 2013, Plaintiff received a "final written warning for her failure to meet performance expectations." (Id. at ¶ 44). She received this final warning despite receiving a merit based raise in January 2013. (Doc. 36, Pltf.'s Br., Ex. B, Bates 151, 200).

In late August and early September, 2013, Plaintiff began discussing the investigation of Gaston and Plaintiff's potential lawsuit against Defendants with her fellow employees. (Id. at ¶¶ 46, 47). After receiving complaints from some of Plaintiff's coworkers about her discussing the investigation and potential lawsuit, Defendant Hernandez met with Plaintiff on September 3, 2013, and advised her to refrain from discussing the investigation with fellow employees. (Id. at ¶ 49; Doc. 36, Pltf.'s Br. at 10). Finally, although BOA alleges it terminated Plaintiff's employment on October 17, 2013, for "poor performance" (Doc. 32, Def.'s SOF at ¶ 52), discovery in this matter indicates that the decision to terminate Plaintiff's employment was made on September 11, 2013, eight days after Plaintiff was discussing the investigation and potential lawsuit against Defendants with coworkers. (Doc. 36, Pltf.'s Br. at 10, Ex. A, at 107). Plaintiff subsequently filed a complaint against Defendants on December 3, 2014, alleging gender discrimination, retaliation, and negligence under Title VII and the PHRA. (Doc. 1, Compl.).

3

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. Anderson, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief." U.S. Bank, Nat'l Ass'n v. Greenfield, No. 1:12-CV-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2-3).

## III. DISCUSSION

Plaintiff brings suit against Defendants, alleging that her discharge from employment with Bank of America was in retaliation to an alleged protected right under Title VII and the PHRA,[2] the attempt to collect information from other employees to aid and assist her in filing an EEOC complaint against Defendants. Title VII prohibits an employer from retaliating against a worker for either participating in a Title VII proceeding or opposing an employer's discriminatory practices. See 42 U.S.C.A. § 2000e-3(a).

### Retaliation Claim

In analyzing Plaintiff's retaliation claim, we proceed under the three-step proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). First, Plaintiff must establish, by a preponderance of the evidence, a prima facie case of retaliation. Culler v. Shinseki, 840 F.Supp. 2d 838, 845 (3d Cir. 2011). Once established, the burden shifts to Defendants to rebut the presumption of retaliation by articulating a non-retaliatory reason for their action. Id. If Defendants meet their burden of production, the presumption of discrimination created by the prima facie case is rebutted, and Plaintiff then bears the ultimate burden of proving that she has been the victim of retaliation. Id.; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-11 (1993).

To establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in protected employee activity, (2) that an adverse employment action was taken against her either subsequent to or contemporaneous with the protected activity, and (3) that there

---

[2] The Court notes that Plaintiff's PHRA claims are subject to the same analysis as Title VII claims and thus, analysis under Title VII applies with equal force to PHRA claims. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995); Ostrowski v. Prudential Equity Grp., LLC, 2006 WL 1330113 (M.D. Pa. May 12, 2006).

was a causal link between the protected activity and the adverse employment action. Andreoli v. Gates, 482 F.3d 641, 649 (3d Cir. 2007); Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005).

It is undisputed that Plaintiff suffered an adverse employment action when she was terminated and therefore satisfies the second requirement of her prima facie case. See Thompson v. Ass'n of Pa. State Coll. and Univ. Faculties, No. 1-04-0317, 2005 WL 2030475, at *4 (M.D.Pa. 2005) (noting that termination is an adverse employment action). The first and third elements, are, however, contested. Therefore, to survive summary judgment, Plaintiff bears the initial burden in proving that she was engaged in protected activity when soliciting information from coworkers to support a Title VII and PHRA claim and that there was a causal link between this protected activity and the adverse employment action.

### Protected Activity

Protected activities fall into two distinct categories: participation or opposition. See 42 U.S.C.A. § 2000e-3(a). An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace. See id.

Activities constituting participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C.A 2000e-3(a). Plaintiff does not assert her actions are cognizable as participation, but rather, are oppositional. (Doc. 36, Pltf.'s Br., at 5). To qualify as opposition activity, an employee need not engage in the formal process of adjudicating a discrimination claim. See Hartley v. Pocono Mt. Reg'l Police Dept., No. 3-04-2045, 2006 WL

4389589, at *12 (M.D.Pa. 2006) (finding that letters and verbal complaints made to an employer and supervisor during employment are sufficient to satisfy the first element of a retaliation claim); Abramson v. Wm. Patterson Coll. of N.J., 260 F.3d 265, 287 (3d Cir. 2001) (finding that letter Plaintiff wrote to employer that she was being discriminated against was sufficient to fulfill first prong of retaliation claim); Snodgrass v. Brown, No. 89-11171-K, 1990 WL 198431, at *16 (D.Kan. Nov. 26, 1990) (holding that a threat to file suit is protected activity). "Plaintiff's complaints of discrimination to her employer, 'whether oral or written, formal or informal, are sufficient to satisfy the first prong of the prima facie case, provided the complaints expressed [Plaintiff's] opposition to a protected activity under Title VII.' " Hartley, 2006 WL 4389589, at *12, citing Abramson, 260 F.3d at 288. In determining whether a plaintiff sufficiently "opposed" discrimination, the court looks "to the message being conveyed rather than the means of conveyance." Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006).

Plaintiff argues that the protected activity necessary to prove her retaliation claim, includes opposition to Defendants' alleged discriminatory practice in the workplace and is not limited to the formal filing of a discrimination charge or complaint. (Doc. 36, Pltf.'s Br., at 5). We find that the evidence presented by Plaintiff, particularly, that she was attempting to gather information for a complaint she intended on filing against Defendants for what she felt as being discriminated against, suffices to satisfy the first prong of a retaliation claim. See Snodgrass 1990 WL 198431, at *16 (holding that a threat to file suit is protected activity); Abramson, 260 F.3d at 287 (finding that letter Plaintiff wrote to employer that she was being discriminated against was sufficient to fulfill first prong of retaliation claim).

7

The protected activity element of retaliation claim is not so narrowly construed as Defendants assert, *i.e.* the filing of a complaint. So long as Plaintiff expressed opposition to an employment practice made unlawful by Title VII, whether "oral or written, formal or informal," it would qualify as protected opposition. Hartley, 2006 WL 4389589, at *12, citing Abramson, 260 F.3d at 288. The opposition clause "covers conduct such as 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices.' " Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 721 (6th Cir. 2008); Abdul-Latif v. Cnty. of Lancaster, 990 F. Supp. 2d 517, 529-30 (E.D.Pa. 2014) (stating that "Plaintiff's statements to her co-workers qualify as protected opposition.").

Thus, we find that Plaintiff's complaints and statements to her co-workers, identifying her belief that she was the victim of harassment by Defendants and her intent on filing a charge as a result of the same, qualifies as protected opposition. Plaintiff has therefore satisfied the first element of her prima facie case.

We also agree with Plaintiff that a causal link existed between the protected activity and the adverse action. To establish causation, a plaintiff must show: 1) a temporal proximity between the protected activity and adverse action; 2) a pattern of antagonism after the protected act; or 3) the record taken as a whole supports an inference of retaliation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). Although Defendants emphasize that five months had passed between Plaintiff's May, 2013 internal harassment complaint and her termination of employment in October, 2013, to argue that this is not unusually suggestive of causation (Doc. 33, Def.'s Reply Br., at 11), they overlook the September 3, 2013 protected opposition activity Plaintiff engaged in.

As noted above, Plaintiff's statements to her co-workers of her intention of filing a charge, is protected opposition activity. While Defendants also allege that Plaintiff was terminated on October 17, 2013 (Doc. 32, Def.'s SOF, ¶ 52), discovery in this case reveals that the decision to terminate Plaintiff was made on September 11, 2013, eight days after Plaintiff's protected opposition activity. (Doc. 34, Ex. A, GH Dep, 107:21-25). Here, the temporal proximity is evidence of causation. Abdul-Latif, 990 F. Supp. 2d at 530 ("Temporal proximity, without more, may create an inference of causation if the timing is unusually suggestive") citing Jalil v. Avdel Corp. 873 F.2d 701, 708 (3d. Cir. 1989); Blakney v. City of Phila., 559 F. App'x 183, 186 (3d Cir. 2014) ("temporal proximity greater than ten days requires supplementary evidence"); Shenk v. Pennsylvania, No. 1-11-1238, 2013 WL 1969311 (M.D.Pa. May 13, 2013) (temporal proximity of less than one week is unusually suggestive). These facts are enough to find a causal link.

While Defendants assert that Plaintiff was terminated due to her poor performance, Plaintiff has adduced sufficient evidence from which a reasonable jury could conclude that the proffered explanation is pretext. Specifically, Plaintiff has presented evidence that she received a merit raise in January, 2013. Given this evidence and the close temporal proximity between the protected activity and adverse employment action, genuine issues of material fact exist on the record which precludes the granting of Defendants' summary judgment motion.

Additionally, because there are genuine issues of material fact on the retaliation claim against Bank of America, Defendants' motion for summary judgment on the alleged aiding and abetting violation of the PHRA must also be denied.

## IV. CONCLUSION

For the reasons set forth above, we will deny Defendants' motion for summary judgment. An appropriate order is attached.